**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE ELECTRICAL WORKERS PENSION TRUST and ELECTRICAL WORKERS PENSION TRUST, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| vs. | )<br>) |
| NATIONAL SECURITY TECHNOLOGIES, LLC, a foreign limited liability company, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

Case No.: 2:21-cv-00062-GMN-BNW

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 14), filed by Plaintiffs Board of Trustees of the Electrical Workers Pension Trust and the Electrical Workers Pension Trust (collectively, "Plaintiffs").  Defendant National Security Technologies, LLC ("Defendant") filed a Response, (ECF No. 17), to which Plaintiffs filed a Reply, (ECF No. 18).

For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment.

## I.   BACKGROUND

This case arises out of Defendant's alleged untimely initiation of arbitration after halting contributions to Plaintiffs' employee benefit pension plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381, *et seq.* ("MPPAA").  Plaintiffs are a multiemployer benefit pension plan that provides annuity pension benefits to electricians in Southern Nevada and receives funding from contributing employers via employee benefit contributions. (Mot. Summ. J. ("MSJ") 3:21–4:2, ECF No. 14).

Defendant is an employer within the meaning of 29 U.S.C § 1002(5), (*Id.* 4:3), (Answer First Am. Compl. ("Answer") ¶ 7, ECF No. 13), and was a Management and Operating Contractor at the Nevada National Security Site ("NNSS") owned by the National Nuclear Security Administration, which is a semi-autonomous entity within the United States Department of Energy ("DOE"). (Def.'s Req. Review at 3, Ex. 4 to MSJ, ECF No. 14-1).

In October of 2012, the parties entered into a Project Labor Agreement (the "PLA") that required Defendant to make employee benefit contributions to Plaintiffs. (*See generally* PLA, Ex. 2 to MSJ, ECF No. 14-1).  However, in 2017, Defendant lost its bid to continue its contract with the DOE, losing out to Mission Support and Test Services, LLC ("MSTS"), which resulted in Defendant halting employee benefit contributions to Plaintiffs. (MSJ 4:9–14); (Resp. 1:22–24).

Importantly, pursuant to ERISA, as amended by the MPPAA, when an employer halts employee benefit contributions to a multiemployer benefit pension plan, the employer is liable to the pension plan for withdrawal liability—the unfunded vested benefits attributable to that employer's participation. (MSJ 15:25–27) (citing 29 U.S.C. § 1381); (*see also id.* 2:4–6).  The employer may dispute being liable for withdrawal liability by arbitrating the issue; to do so, the employer must initiate arbitration within sixty (60) days after the earlier of "(A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title." 29 U.S.C. § 1401(a)(1).  If the employer does not initiate arbitration within the sixty (60) day window, "the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C § 1401(b)(1).

To that end, because Defendant ceased contributions to Plaintiffs, on January 23, 2020, Plaintiffs sent Defendant a demand for withdrawal liability for $2,512,483. (Withdrawal Liability Demand at 1, Ex. 3 to MSJ, ECT No. 14-1).  On April 21, 2020, Defendant sent

Plaintiffs a Request for Review of the withdrawal liability it assessed against Defendant. (Def.'s Req. Review at 1, Ex. 4 to MSJ).  On October 29, 2020, Plaintiffs responded to Defendant's Request for Review, reaffirming its initial withdrawal liability assessment. (Resp. Req. Review at 1, Ex. 6 to MSJ, ECF No. 14-1).  On December 15, 2020,[1] Defendant submitted a demand for arbitration to the American Arbitration Association ("AAA") to dispute Plaintiffs' assessment that Defendant was liable for their alleged withdrawal. (*See generally* Demand Arbitration, Ex. 7 to MSJ, ECF No. 14-1).  Plaintiffs allege that Defendant untimely initiated arbitration by not doing so before the statutorily prescribed deadline expired. (*See* MSJ 18:1–17).  Notably, the PLA is silent about when the deadline to initiate arbitration is. (*See generally* PLA, Ex. 2 to MSJ).

On December 21, 2020, Plaintiffs' counsel, Christopher Humes, and Defendant's counsel, Richard Birmingham, spoke on the phone and discussed Defendant's alleged untimely initiation of arbitration. (MSJ 5:15–19); (Aff. Christopher Humes ("Humes Aff.") ¶ 4, ECF No. 14-1).  Plaintiffs allege Mr. Birmingham admitted that Jeff Belfiglio, another one of Defendant's counsel, likely missed the deadline to timely initiate arbitration, which required disclosing missing this deadline to their firm's malpractice insurance carrier. (MSJ 5:17–24). Plaintiffs then contend Mr. Birmingham requested that Plaintiffs stay any dispute regarding the timeliness of arbitration to avoid disclosing missing the deadline to their insurance carrier. (*Id.* 5:25–27).  Defendant, however, denies that Mr. Birmingham inquired about the stay to avoid disclosing missing the deadline to their insurance carrier. (Resp. 7:7–9).  Thereafter, on January 7, 2021, Plaintiffs sent an email message to the AAA refusing to participate in arbitration because it had not agreed to engage in arbitration. (Def./AAA Email String at 2, Ex. 12 to MSJ, ECF No. 14-1).

---

[1] Plaintiffs contend Defendant submitted the Demand for Arbitration Letter on December 17, 2020, (*see* MSJ 5:4–6), but the Court will use December 15, 2020, because it is the date displayed on the letter. (Demand Arbitration at 2, Ex. 7 to MSJ).

1    On January 15, 2021, Plaintiffs brought this declaratory relief action, requesting that the

2    Court: (1) declare the full withdrawal liability amount is due and owing; (2) declare any

3    pending arbitration proceedings between Plaintiffs and Defendant are untimely and thus void;

4    and (3) order the AAA to dismiss any pending arbitration proceedings between Plaintiffs and

5    Defendant. (*See* Compl. 5:1–8, ECF No. 1); (*see also* MSJ 7:22–25).  On March 9, 2021,

6    Plaintiffs filed an Amended Complaint that requested the same relief. (*See* First Am. Compl.

7    5:15–22, ECF No. 12).  On March 26, 2021, Plaintiffs filed the instant Motion. (*See generally*

8    MSJ).

9    **II.    LEGAL STANDARD**

10    The Federal Rules of Civil Procedure provide for summary adjudication when the

11    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

12    affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

13    is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

14    may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

15    (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on

16    which a reasonable factfinder could rely to find for the nonmoving party. *See id.*  "The amount

17    of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

18    judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral*

19    *Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.

20    253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all

21    inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

22    favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United*

23    *States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary

24    judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*,

25    477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, the court must deny summary judgment and it need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002)

1
2
3
4
5
6
7

(internal citations omitted). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

8
9
10
11
12

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

13

**III.   DISCUSSION**

14
15
16
17
18
19
20
21

The parties disagree on two key issues: (1) whether Defendant completely withdrew from making employee contributions to Plaintiffs so as to be liable for withdrawal liability as defined by 29 U.S.C. § 1383, (MSJ 4:4–14), (Resp. 1:22–24, 2:3–7); and (2) whether Defendant untimely initiated arbitration such that if Defendant did, the full withdrawal liability amount is due and owing, (MSJ 15:23–18:21), (Resp. 5:22–6:21). Plaintiffs also claim they are entitled to attorney's fees, (MSJ 20:21–28), while Defendant argues the Court should stay proceedings pending arbitration, that equitable tolling and equitable estoppel apply, and that Plaintiffs are engaging in forum shopping, (Resp. 6:3–26, 7:23–8:5).

22
23
24
25

Before the Court addresses these arguments, however, it will discuss standing under the Declaratory Relief Act because Plaintiffs seek declaratory judgment. Thereafter, the Court will discuss whether Defendant completely withdrew from making contributions to Plaintiffs such that Defendant is liable for withdrawal liability. Then, the Court will turn to whether

Defendant untimely initiated arbitration such that if it did, Plaintiffs can collect the unfunded vested benefits attributable to Defendant's participation.  Finally, the Court will address the issues of attorney's fees, staying the case, equitable tolling, equitable estoppel, and forum shopping.

### A. <u>Standing under the Declaratory Relief Act</u>

Plaintiffs assert they have standing to bring this action under the Declaratory Judgment Act because the questions of whether the parties must litigate this matter in arbitration and whether Defendant is liable for withdrawal liability are actual cases or controversies. (*See* MSJ 13:5–12).  Defendant does not dispute standing. (*See generally* Resp.).  The Declaratory Judgment Act states, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).  Once the Court determines that there is a case or controversy, the Court must decide whether it should entertain the declaratory action. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).  To do so, the Court must balance the *Brillhart* factors. *Id.*  Those factors, which are non-exclusive are that the Court should: (1) "avoid needless determination of state law issues; (2) . . . discourage litigants from filing declaratory actions as a means of forum shopping; and (3) . . . avoid duplicative litigation. Essentially, the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005).

Here, Plaintiffs have standing to bring this suit because the parties' dispute regarding whether Defendant timely initiated arbitration is a concrete controversy. *See, e.g.*, *Pension Plan for Pension Trust Fund for Operating Engineers v. Weldway Const.*, Inc., 920 F. Supp. 2d 1034, 1045 (N.D. Cal. 2013) (addressing the parties' dispute regarding timeliness of

1  arbitration); *Auto. Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc.*, 73 F. Supp. 3d 1173,

2  1184 (N.D. Cal. 2014), *aff'd*, 672 F. App'x 685 (9th Cir. 2016) (same).

3       Moreover, it is appropriate for the Court to entertain this declaratory action because the

4  suit satisfies the *Brillhart* factors.  First, this case does not deal with state law issues.  The issue

5  of whether a party timely initiates arbitration arises under the MPPAA.  Second, as discussed in

6  further detail below, the Court is unconvinced that Plaintiffs are forum shopping.  Third,

7  hearing this case does not present duplicative litigation issues.  Although this case is also before

8  an arbitrator, those proceedings have likely not begun or are likely in their nascent stages

9  because Plaintiffs refused to engage in those arbitration proceedings. (*See* Resp. 8:13).  Further,

10  given the stakes at play, hearing this case does not offend the principles of judicial

11  administration, comity, or fairness to the litigants.  The Court turns now to the issue of

12  withdrawal liability.

13              **B.  <u>Withdrawal from the Trust</u>**

14       Plaintiffs aver Defendant completely withdrew when Defendant lost its bid to continue

15  its contract with the DOE and stopped making employee benefit contributions to Plaintiffs.

16  (MSJ 4:9–14).  Defendant responds that it did not withdraw because MSTS succeeded

17  Defendant in making contributions to Plaintiffs, making it so that Plaintiffs never stopped

18  receiving the contributions they required from a contributing employee. (*See* Resp. 2:3–7).

19  Defendant also avers that it timely initiated arbitration. (*Id.* 5:22–6:21).

20       "As a general matter, pension plans are federally regulated pursuant to [ERISA], 29

21  U.S.C. §§ 1001 *et seq.* (1988).  The [MPPAA], 29 U.S.C. §§ 1381–1453 (1988), amended

22  ERISA to allow plans to impose proportional liability on withdrawing employers for the

23  unfunded vested benefit obligations of multiemployer plans." *Carpenters Pension Tr. Fund for*

24  *N. California v. Underground Const. Co.*, 31 F.3d 776, 778 (9th Cir. 1994). "To the extent that

25  past contributions did not suffice to fund obligations that had vested at the time of withdrawal,

the MPPAA sought to make withdrawing employers pay their proportionate share of the deficit such that remaining employers would not be unfairly saddled with increased payments." *Id.* Thus, when an employer completely withdraws from making employee benefit contributions to a multiemployer benefit pension plan, the employer is liable to the pension plan for withdrawal liability. 29 U.S.C. § 1381; *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1086 (9th Cir. 2015). "'[W]ithdrawal' triggering this liability occurs when an employer permanently terminates its obligation to contribute or ceases all operations covered by the plan." *Id.* (citing 29 U.S.C. § 1383(a)). The parties may dispute payment of withdrawal liability through arbitration. *See* 29 U.S.C. § 1401(a)(1). But "[i]f the parties do not initiate arbitration within the time allotted, the employer is responsible for paying the entirety of the withdrawal liability, and the plan sponsor may sue for collection in the state or federal courts." *Bd. of Trustees of the W. Metal Indus. Pension Fund v. Cent. Mach. Works, Inc.*, No. C14-00802 RAJ, 2016 WL 3906894, at *2 (W.D. Wash. July 19, 2016).

Here, Defendant is an employer within the meaning of 29 U.S.C. § 1002(5). (MSJ 4:3), (Answer ¶ 7, ECF No. 13). In addition, Defendant was a signatory to the PLA, requiring it to make employee benefit contributions to Plaintiffs. (*See generally* PLA, Ex. 2 to MSJ). When it lost its bid to MSTS, Defendant stopped making employee benefit contributions to Plaintiffs. (Resp. 1:22–24); (Def.'s Req. Review at 3–4, Ex. 4 to MSJ, ECF No. 14-1). Defendant claims MSTS succeeded Defendant and made contributions to the Plaintiffs. (*See* Resp. 2:3–7). However, Defendant does not cite to any legal authority to support the argument that an employer that ceases making contributions to a pension plan is not liable for withdrawal liability if a second employer succeeds the first employer in making contributions to the pension plan. Indeed, neither Section 1381 nor Section 1383(a) suggest that a successor to an employer's obligation to make employee contributions to a multiemployer benefit pension plan

can result in avoiding liability. *See* 29 U.S.C. § 1381; *id.* 1383(a); *see also Cuyamaca Meats, Inc. v. San Diego & Imperial Ctys. Butchers' & Food Employers' Pension Tr. Fund*, 827 F.2d 491, 495–96 (9th Cir. 1987) (explaining that "when an employer withdraws from a multiemployer pension plan, the employer becomes liable for its proportionate share of the plan's unfunded vested liability"). Thus, under Section 1383(a), when Defendant ceased making contributions to Plaintiffs, Defendant completely withdrew, making it responsible for the corresponding withdrawal liability. *See Jorgensen v. Scolari's of California, Inc.*, No. SACV 14-01211-CJC(RNBx), 2014 WL 12480261, at *2 (C.D. Cal. Nov. 12, 2014) (finding that an employer who stops making payments to a multiemployer benefit pension plan constitutes withdrawal, which leads to the employer being liable for withdrawal liability); *Carpenters Pension Tr. Fund for N. California v. MGM's Cabinet Installation Servs.*, No. C 08-01164 WHA, 2008 WL 3876182, at *1 (N.D. Cal. Aug. 18, 2008) (holding that a complete withdrawal under 29 U.S.C. § 1383(a) occurs when an employer ceases to make contributions to a multiemployer benefit pension plan, which makes Defendant responsible for withdrawal liability).

Given that Defendant became liable for withdrawal liability, either party must dispute the amount due through arbitration. *See* 29 U.S.C. § 1401(a)(1). If either party fails to timely initiate arbitration, Plaintiffs have the right to bring an action to collect the unfunded vested benefits attributable to Defendant's participation. To that end, the Court turns to the issue of the timeliness of Defendant's initiation of arbitration.

### C. Initiation of Arbitration

The parties dispute two issues regarding Defendant's timeliness of arbitration. First, they disagree about whether the Court has jurisdiction over the matter of the timeliness of Defendant's initiation of arbitration. (*See* MSJ 18:22–21:20); (Resp. 4:22–5:21). Second, they

dispute whether Defendant timely initiated arbitration. (*See* MSJ 18:1–17); (Resp. 2:10–16). The Court will discuss each issue in turn.

### i. <u>Jurisdiction</u>

Plaintiffs argue the Court has the authority to hear the matter of timeliness of arbitration. (*See* MSJ 18:22–21:20).  Defendant, however, contends the MPPAA mandates that this matter be subject to mandatory arbitration because other issues of fact that inform the matter of timeliness of arbitration must be heard by an arbitrator. (*See* Resp. 4:22–5:21).   Under the MPPAA, any dispute between a multiemployer benefit pension plan sponsor and an employer *concerning a determination made under 29 USC §§ 1381–99* is subject to arbitration. 29 USC § 1401(a)(1); *Teamsters Pension Tr. Fund-Bd. of Trustees of W. Conf. v. Allyn Transp. Co.*, 832 F.2d 502, 505 (9th Cir. 1987).  Either party may initiate arbitration, but they must do so within the timeframe prescribed by 29 USC § 1401(a)(1). 29 USC § 1401(a).

Here, at the heart of Plaintiffs and Defendant's dispute is whether Defendant timely initiated arbitration. (*See* MSJ 18:22–21:20); (Resp. 4:22–7:22).  The issue of whether a party timely initiates arbitration arises under Section 1401(a)(1) because this Section dictates the deadline for parties to initiate arbitration; this issue does not fall under Sections 1381 through 1399.  *See Weldway Const.*, Inc., 920 F. Supp. 2d at 1045 (noting that timeliness of initiating arbitration "arises under section 1401(a)(1), not sections 1381 through 1399," and concluding that, "[i]n light of Congress' decision to explicitly require arbitration of disputes arising under only sections 1381 through 1399 and the policy in favor of judicially enforcing the statutory deadlines, the Court concludes that it must resolve the issue of timeliness").  Being that the issue of whether a party timely initiates arbitration is not subject to arbitration, the Court has jurisdiction over this matter.  The Court will now turn to the merits of the case.

1

2

*ii.* **Timeliness of Defendant's Initiation of Arbitration**

Plaintiffs contend Defendant failed to timely initiate arbitration within the timeframe set by the MPPAA. (*See* MSJ 18:1–17) (citing 29 USC § 1401(b)(1)).  Defendant responds that it timely initiated arbitration because it relied on an alleged prior course of conduct between Jeff Belfiglio, Defendant's counsel, and Christopher Humes, Plaintiffs' counsel, that led Defendant to believe there was more time to initiate arbitration. (*See* Resp. 2:10–16).  Defendant claims that while representing other parties in distinct cases, Mr. Belfiglio and Mr. Humes engaged in a course of conduct that established particular deadlines to initiate arbitration. (*See id.* 2:10–14); (Decl. Jeff Belfiglio ("Belfiglio Decl.") ¶¶ 2–5, Ex. 9 to Resp., ECF No. 17-2).

"As soon as practicable after an employer's complete . . . withdrawal," the pension plan must send its assessment of withdrawal liability to the employer, along with a notification and demand for payment of the withdrawal liability amount. 29 U.S.C § 1399(b)(1); *see also Brentwood Fin. Corp. v. W. Conf. of Teamsters Pension Tr. Fund*, 902 F.2d 1456, 1459 (9th Cir. 1990).  To dispute a withdrawal liability assessment, an employer must submit a request for review of the assessment to the pension plan within ninety (90) days of the pension plan's assessment of withdrawal liability. *See* 29 U.S.C. § 1399(b)(2); *Weldway Const., Inc.*, 920 F. Supp. 2d at 1044.

Once an employer submits a request for review, either party may initiate arbitration within sixty (60) days after the *earlier* of the following two events occur: (1) the date the pension plan responds to the request for review; or (2) 120 days after the employer submits a request for review. *See* 29 U.S.C. § 1401(a)(1); *Weldway Const., Inc.*, 920 F. Supp. 2d at 1044. If neither party initiates arbitration within the sixty-day window, then "the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C § 1401(b)(1); *Cent. Mach. Works, Inc.*, 2016

WL 3906894, at *3.  However, the relevant regulations provide that the parties may "agree at any time to waive or extend the time limits for initiating arbitration." 29 C.F.R. § 4221.3(b).

Here, Defendant failed to initiate arbitration within the statutory timeline.  As explained above, Plaintiffs sent Defendant their assessment of withdrawal liability on January 23, 2020. (Withdrawal Liability Demand at 1, Ex. 3 to MSJ).  Defendant then had until April 22, 2020 (*i.e.*, ninety (90) days after the pension plan makes its assessment of withdrawal liability) to request a review of the assessment. 29 U.S.C. § 1399(b)(2).  Defendant timely sent Plaintiffs a request for review on April 21, 2020. (Def.'s Req. Review at 1, Ex. 4 to MSJ).  On October 29, 2020, Plaintiffs responded to Defendant's request for review. (Resp. Req. Review at 1, Ex. 6 to MSJ).

Given these dates, the deadline to initiate arbitration was sixty (60) days after the *earlier* of either: (1) October 29, 2020 (*i.e.*, when Plaintiffs responded to Defendant's request for review); or (2) August 19, 2020 (*i.e.,* 120 days after April 21, 2020, which is when Defendant submitted its request for review). *See* 29 U.S.C. § 1401(a)(1).  Given that August 19, 2020, is the earlier of these two dates, Defendant had until October 18, 2020 (*i.e.*, sixty (60) days after August 19, 2020) to initiate arbitration unless the parties waived or extended the deadline. *See id.*; 29 C.F.R. § 4221.3(b).  However, Defendant did not initiate arbitration until December 15, 2020, and as discussed *infra*, the evidence does not indicate that the parties waived or extended the deadline. (*See generally* Demand Arbitration, Ex. 7 to MSJ).  Thus, Plaintiffs have met their initial burden of establishing the absence of a genuine issue of material fact regarding Defendant's failure to timely initiate arbitration under Section 1401(a)(1).  The burden to demonstrate otherwise rests now with Defendant.

For its part, Defendant argues that the statutory deadlines do not apply because the parties agreed to extend the deadline to initiate arbitration.  Specifically, Defendant avers that it timely initiated arbitration pursuant to a previous course of conduct between Mr. Belfiglio and

Mr. Humes that led Defendant to believe it had until sixty days after Plaintiffs responded to Defendant's request for review to initiate arbitration. (*See* MSJ 2:10–14); (Belfiglio Decl. ¶¶ 2–5, Ex. 9 to Resp.).  Defendant provides Mr. Belfiglio's declaration, wherein Mr. Belfiglio outlines how he came to understand what the deadline to initiate arbitration in this case would be.[2]  Mr. Belfiglio explains that in a case where he represented Defendant and Mr. Humes represented the Construction Industry and Laborers Pension Trust of Southern Nevada ("Construction Trust"), the Construction Trust also assessed withdrawal liability against Defendant. (*Id.* ¶ 4, Ex. 9 to Resp.).  He states that Defendant submitted a request for review on March 18, 2020, and that the Construction Trust responded to the request on May 15, 2020. (*Id.*, Ex. 9 to Resp.).  Without providing evidence of an agreement between the parties, Mr. Belfiglio declares the sixty-day deadline to initiate arbitration in the Construction Trust case applied to the date when the Construction Trust responded to the request for review (*i.e.*, May 15, 2020). (*Id.*, Ex. 9 to Resp.).  Defendant initiated arbitration on the last day of that deadline: July 14, 2020. (Demand Notice Initiation Arbitration at 3, Ex. 5 to Resp., ECF No. 17-1).

Mr. Belfiglio's declaration, however, does not demonstrate that he and Mr. Humes came to an agreement to extend the deadline to initiate arbitration in the Construction Trust case.  It only shows that Defendant initiated arbitration consistent with Section 1401(a)(1).[3]  The evidence demonstrates that Defendant initiated arbitration within sixty (60) days from when the

---

[2] The Court elects not to discuss a purported agreement to extend the initiation of arbitration deadline between Defendant and the Plumbers and Pipefitters Pension Union Local No. 525 because Defendant did not initiate arbitration in that case. (Belfiglio Decl. ¶ 3, Ex. 9 to Resp.).  As such, that case is not demonstrative of any agreement to extend a deadline to initiate arbitration.

[3] In the Construction Trust case, the parties had until 60 days after the *earlier* of either: (1) May 15, 2020 (*i.e.*, when the Construction Trust responded to Defendant's request for review); or (2) July 16, 2020 (*i.e.*, 120 days after March 18, 2020, which is when Defendant submitted its request for review) to initiate arbitration. *See* 29 U.S.C. § 1401(a)(1); (Belfiglio Decl. ¶ 4, Ex. 9 to Resp.).  Given that May 15, 2020, is the earlier of the two dates, Defendant and the Construction Trust had until July 14, 2020 (*i.e.*, sixty (60) days after May 15, 2020) to initiate arbitration unless the parties waived or extended the deadline. *See id.*; 29 C.F.R. § 4221.3(b).

Construction Trust responded to Defendant's request for review because it was the earlier of the two dates contemplated under Section 1401(a)(1). (*See* Belfiglio Decl. ¶ 4, Ex. 9 to Resp.).

Further, the record is bereft of any agreement between Defendant and the Construction Trust to extend the deadline for initiating arbitration. In fact, an email exchange between the Construction Trust and Defendant suggests that the Construction Trust disagreed about extending the statutory deadline to initiate arbitration. In the email exchange, Mr. Belfiglio and Mr. Humes attempt to decide what the procedure for engaging in arbitration should look like. (*See* Email Exchange at 3, Ex. 7 to Resp., ECF No. 17-1). After counsel discuss how to choose an arbitrator, Mr. Belfiglio writes that because the Construction Trust's "rules do not stipulate to using AAA, our notice and demand for arbitration constitutes a timely filing under the PBGC rules." (*Id.* at 1, Ex. 7 to Resp.). He goes on to state that, "I also understand that we are agreeing to extend the time to select an arbitrator in order to accommodate your preferences." (*Id.*, Ex. 7 to Resp.). Mr. Humes disagrees, stating, "we do not agree to your conditions and the [Construction] Trust reserves all available claims and defenses." (*Id.*, Ex. 7 to Resp.). Thereafter, Defendant submitted a request for arbitration to the AAA on September 14, 2020. (AAA Acknowledgement Receipt Demand Arbitration at 1, Ex. 9 to Resp., ECF No. 17-1). This demonstrates that the parties did not agree that Defendant's request for the AAA to arbitrate their case dated September 14, 2020, necessarily meant that Defendant timely initiated arbitration; in other words, the parties did not agree to extend the deadline to timely initiate arbitration past the July 14, 2020, deadline.

Other than in counsel's declaration, Defendant fails to demonstrate that Mr. Belfiglio and Mr. Humes had a prior course of conduct that led Defendant or Mr. Belfiglio to believe that the parties or counsel agreed to extend the deadline to initiate arbitration. As such, Defendant did not meet its burden of establishing a genuine issue of material fact concerning whether the parties agreed to extend the deadline to initiate arbitration because there is no evidence that

they extended the date in this case, or in any other case litigated between these two attorneys.
*See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party
relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory
allegations unsupported by factual data to create an issue of material fact."); *F.T.C. v. Publ'g
Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A
conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is
insufficient to create a genuine issue of material fact."); *see also LVRC Holdings LLC v.
Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (quoting *Blue Ridge Ins. Co. v. Stanewich*, 142
F.3d 1145, 1147 (9th Cir. 1998) ("If the factual context makes the non-moving party's claim of
a disputed fact implausible, then that party must come forward with more persuasive evidence
than otherwise would be necessary to show that there is a genuine issue for trial.").  Therefore,
the Court grants summary judgment as to Plaintiffs' claim against Defendant for failing to
timely initiate arbitration.  Accordingly, the Court finds that Plaintiffs' withdrawal liability
assessment of $2,512,483 is immediately due and owing on the schedule set by Plaintiffs, any
pending arbitration proceedings are untimely and therefore void, and that the American
Arbitration Association must dismiss any pending arbitration proceedings related to this matter,
as the initiation of such proceedings are untimely.

### D.  Attorney's Fees

Plaintiffs argue they are entitled to reasonable attorney's fees because they claim
Defendant "has engaged in numerous bad faith actions in this Court and within the arbitration
proceedings, including falsely alleging that Plaintiffs agreed to extend deadlines, and
continually refusing to vacate an arbitration proceeding that it, admittedly, failed to timely
initiate." (MSJ 20:21–28).  Defendant does not respond to this claim. (*See generally* Resp.).

District courts have inherent power to sanction a party for improper conduct. *Fink v.
Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).  The court may only issue sanctions under its

inherent power upon finding "bad faith or conduct tantamount to bad faith." *Id.* at 994.  Bad faith encompasses "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.*  In addition, "a party may 'show[ ] bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Id.* at 992.  Moreover, "sanctions are justified when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Id.*  Upon a finding of bad faith, the decision to issue sanctions is within the court's discretion. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995).

Here, the Court disagrees that Defendant has acted in bad faith in this proceeding or in the arbitration proceeding.  Other than explaining that the Court has inherent authority to levy sanctions, Plaintiffs do not point to any specific legal authority demonstrating that Defendant engaged in bad faith or acted for an improper purpose.  Further, the evidence does not demonstrate that Defendant acted in bad faith.  Although the record shows the parties did not agree to extend the deadline to initiate arbitration, Plaintiffs have not shown that Defendant's arguments regarding the deadline to initiate arbitration were made in bad faith or constituted improper use.  The Court accordingly denies Plaintiffs' request for attorney's fees.

### E.  Other Claims Made by Defendant

In addition to responding to Plaintiffs' motion, Defendant counters with its own claims. First, Defendant contends the Court should stay the case pending arbitration in their case. (Resp. 7:23–8:5).  Second, it argues the deadline to initiate arbitration should be tolled because Plaintiffs misled Defendant regarding when Plaintiffs would file its response to Defendant's request for review. (*Id.* 6:3–21).  Third, Defendant claims Plaintiffs should be estopped from arguing that Defendant untimely initiated arbitration because it was diligent and relied on Plaintiffs' previous course of conduct. (*Id.* 6:22–26).  Lastly, Defendant maintains that

Plaintiffs are forum shopping by filing suit here instead of engaging in arbitration as Defendant claims the MPPAA mandates. (*Id.* 7:23–8:5). The Court addresses each argument in turn.

### i. <u>**Staying the Case Pending Arbitration**</u>

Defendant argues the Court should stay this litigation pending the arbitration proceedings it initiated in this case and pursuant to FRCP 56(f). (*See* Resp. 7:23–8:5, 8:17–9:2). Plaintiffs respond that FRCP 56(f) is an improper avenue through which the Court could stay these proceedings because the rule only allows a court to grant or consider summary judgment independent of a motion. (MSJ 10:27–11:28).

Fed. R. Civ. Pro. 56(f) states that "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." *See* Fed. R. Civ. Pro. 56(f).

Here, Defendant fails to cognizably argue that it is entitled to a stay. First, as the Court discussed in detail above, the Court has jurisdiction over this matter; therefore, the Court will not defer its responsibility to hear this matter to arbitration. *See* 29 USC § 1401(a)(1). Second, Defendant offers no explanation as to how Fed. R. Civ. Pro. 56(f) allows or dictates the Court to impose a stay. In fact, Fed. R. Civ. Pro. 56(f) is silent on the issue of imposing stays. Accordingly, the Court denies Defendant's request for a stay.

### ii. <u>**Equitable Tolling of the Statutory Deadline**</u>

Next, Defendant claims the deadline to initiate arbitration was equitably tolled because Plaintiffs misled Defendant regarding when Plaintiffs would file its response to Defendant's request for review and regarding "the timing of arbitration with respect to such response." (*See* Resp. 6:3–21). Plaintiffs respond that the Ninth Circuit has not applied equitable tolling to the statutory deadlines for initiating arbitration under the MPPAA. (Reply 11:11–20). They also

1    contend that they did not mislead Defendant because the parties never agreed to extend the

2    deadline to initiate arbitration. (*Id.* 12:13–19).

3            "The Ninth Circuit has not addressed whether equitable tolling applies to the statutory

4    deadlines for initiating arbitration under the MPPAA." *Weldway Const., Inc.*, 920 F. Supp. 2d

5    at 1046; *see also Pension Plan for Pension Tr. Fund for Operating Engineers v. ACME*

6    *Concrete*, No. C 12-04410 JSW, 2013 WL 12149703, at *2 (N.D. Cal. Jan. 11, 2013)

7    ("Defendants have not demonstrated that equitable tolling is applicable in the Ninth Circuit . . .

8    ."). "Generally, a litigant seeking equitable tolling bears the burden of establishing two

9    elements: (1) that he has been pursuing his rights diligently[;] and (2) that some extraordinary

10   circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2006).  Courts in

11   other jurisdictions that apply equitable tolling to extending the deadline to initiate arbitration

12   under the MPPAA require a showing of fraud, unfair conduct, a party actively misleading the

13   other party, or a party preventing another party in some extraordinary way from asserting its

14   rights. *See Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir.

15   1990); *Doherty v. Teamsters Pension Tr. Fund of Philadelphia & Vicinity*, 16 F.3d 1386, 1393

16   (3d Cir. 1994), *as amended on reh'g* (Mar. 17, 1994).  "The Court assumes, without deciding,

17   that the doctrine of equitable tolling applies to initiating arbitration under the MPPAA."

18   *Weldway Const., Inc.*, 920 F. Supp. 2d at 1047.

19           Here, even assuming the doctrine of equitable tolling applies to the statutory deadlines to

20   initiate arbitration under the MPPAA, Defendant fails to demonstrate that Plaintiffs committed

21   fraud, engaged in unfair conduct, actively misled Defendant, or prevented Defendant in some

22   extraordinary way from asserting Defendant's rights.  Defendant claims Plaintiffs' previous

23   course of conduct misled Defendant regarding: (1) when Plaintiffs would file its response to

24   Defendant's request for review; and (2) the timing of arbitration regarding such response.

25   (Resp. 6:17–19).  First, as discussed *supra*, the evidence does not demonstrate that in the

1  Construction Trust case, Mr. Belfiglio and Mr. Humes agreed on a set date for the Construction

2  Trust to respond to Defendant's request for review.  Absent an agreement, the Court turns to

3  the controlling statute, which does not set a time limit for when a multiemployer benefit

4  pension plan must respond to an employer's request for review. *See* 29 U.S.C. § 1399(b)(2)(B)

5  ("After a reasonable review of [the employer's request for review], the plan sponsor shall notify

6  the employer of – (i) the plan sponsor's decision, (ii) the basis for the decision, and (iii) the

7  reason for any change in the determination of the employer's liability or schedule of liability

8  payments.").  Defendant has not shown the Construction Trust should have responded to their

9  request for review other than by complying with the requirements of Section 1399(b)(2)(B).

10  Thus, Defendant has failed to demonstrate that Plaintiffs misled Defendant regarding when

11  Plaintiffs would file its response to Defendant's request for review.

12         Second, as discussed above, the record does not show that any prior course of conduct

13  existed that caused Defendant or Defendant's counsel to believe the parties agreed to extend the

14  deadline to initiate arbitration.  The evidence only shows that, in the Construction Trust case,

15  Defendant initiated arbitration consistent with Section 1401(a)(1). (*See* Belfiglio Decl. ¶ 4, Ex.

16  9 to Resp.).  Defendant initiated arbitration within sixty (60) days from when the Construction

17  Trust responded to Defendant's request for review because it was the earlier of the two dates

18  contemplated under Section 1401(a)(1). *See* 29 U.S.C. § 1401(a)(1); (Belfiglio Decl. ¶ 4, Ex. 9

19  to Resp.).  Thus, Defendant failed to show that Plaintiffs' alleged previous course of conduct

20  misled Defendant regarding the deadline to initiate arbitration.  Accordingly, the Court denies

21  Defendant's argument regarding equitable tolling.

22                    *iii.*  **Equitable Estoppel**

23         Defendant also claims Plaintiffs should be estopped from arguing that Defendant

24  untimely initiated arbitration because Defendant exercised a high level of diligence and relied

25  on Plaintiffs' previous course of conduct. (*Id.* 6:22–26).  Defendant cites to *Gabriel v. Alaska*

1     *Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014), to support its position. (*Id.*).  Plaintiffs

2     object to the use of this case because it: (1) concerns raising estoppel with respect to benefit

3     claims brought under 29 U.S.C. § 1132(a)(3); and (2) requires the movant to satisfy a seven-

4     element test, which Defendant does not do. (Reply 12:5–9).

5         Equitable estoppel "holds the fiduciary 'to what it had promised' and 'operates to place

6     the person entitled to its benefit in the same position he would have been in had the

7     representations been true.'" *Gabriel*, 773 F.3d at 955 (citing *CIGNA Corp. v. Amara*, 563 U.S.

8     421, 441 (2011)).  Equitable estoppel applies when "(1) the party to be estopped must know the

9     facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting

10    the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true

11    facts; and (4) he must rely on the former's conduct to his injury." *Id.* (quoting *Greany v. W.*

12    *Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992)).  In addition, the moving party

13    must show: "([5]) extraordinary circumstances; ([6]) 'that the provisions of the plan at issue

14    were ambiguous such that reasonable persons could disagree as to their meaning or effect'; and

15    ([7]) that the representations made about the plan were an interpretation of the plan, not an

16    amendment or modification of the plan. *Id.* at 957 (quoting *Spink v. Lockheed Corp.*, 125 F.3d

17    1257, 1262 (9th Cir. 1997)).

18         Here, even assuming the doctrine of equitable estoppel applies within the context of

19    statutory deadlines to initiate arbitration under the MPPAA, Defendant fails to demonstrate or

20    explain how it satisfied the *Gabriel* elements.  First, Plaintiffs know the facts of the case.

21    Second, as discussed in detail *supra*, the evidence does not show that the parties or parties'

22    counsel agreed to extend the deadline to initiate arbitration.  As a result, Defendant failed to

23    demonstrate that a previous course of conduct existed so as for Plaintiffs to subsequently intend

24    for Defendant to act upon said prior course of conduct or that Plaintiffs acted in concert with

25    the alleged prior course of conduct so that Defendant had "a right to believe it is so intended."

Because Defendant cannot satisfy the second *Gabriel* element, it necessarily fails to demonstrate equitable estoppel applies. Accordingly, the Court denies Defendant's argument regarding equitable estoppel.

### iv.  **Forum Shopping**

Finally, Defendant claims that Plaintiffs are forum shopping by filing suit with this Court instead of engaging in arbitration as Defendant alleges the MPPAA mandates. (Resp. 7:23–8:5). Defendant's forum shopping argument sounds in collateral estoppel because it contends that Mr. Humes "understood that any factual dispute involving issues relating to U.S.C. §§ 1381–1399 must be arbitrated when he moved to dismiss the Construction [Trust] dispute in arbitration on the basis of timeliness." (*See id.*). Plaintiffs deny Defendant's claim and contend that they are only seeking a declaration of their rights regarding an issue "outside the range of mandatory arbitration topics." (Reply 16:24–25).

Nonmutual collateral estoppel may apply in cases where the parties are not identical. *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1176 (9th Cir. 2002). "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). Nonmutual collateral estoppel applies when: "(1) the issue at stake must be identical to the one alleged in the prior litigation;" (2) the party against whom collateral estoppel is asserted actually litigated the issue in the prior litigation; "and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993).

Here, Defendant fails to demonstrate that Plaintiffs are forum shopping. In fact, Defendant offers no case law to support this argument. Nevertheless, Defendant does not satisfy the elements of nonmutual collateral estoppel because Plaintiffs were not parties to the Construction Trust case. As such, collateral estoppel does not apply. *See Town of N.*

*Bonneville*, 10 F.3d at 1508.  However, assuming Plaintiffs had litigated the issue in the Construction Trust case, the issues in these cases are distinguishable.  The Construction Trust moved to dismiss the dispute in arbitration because it claimed that Defendant untimely initiated arbitration by sending a notice of arbitration to the Construction Trust without attaching "anything to cause an arbitration to actually occur." (AAA Ruling Res't Mot. Dismiss at 1, Ex. 9 to Resp., ECF No. 17-1).  In contrast, Plaintiffs in the instant action argues Defendant untimely initiated arbitration because it did not initiate arbitration by the statutory deadline. (*See* MSJ 18:1–17).  Thus, even if Plaintiffs had litigated the issue in the Construction Trust case, because the issues are different, Defendant fails to demonstrate that collateral estoppel applies.  Accordingly, the Court denies Defendant's argument regarding collateral estoppel.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, (ECF No. 14), is **GRANTED** to the extent consistent with this order.

**DATED** this __27__ day of March, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court